ORDERED in the Southern District of Florida on __09/16/10__.



Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re

Case No. 09-34791-BKC-RBR
Chapter 11

ROTHSTEIN ROSENFELDT ADLER, P.A.,

Debtor.
_____/

### ORDER AND MEMORANDUM OPINION
### GRANTING MOTION OF TRUSTEE HERBERT STETTIN
### TO APPROVE SETTLEMENT WITH MICHAEL SZAFRANSKI, ET AL.

THIS MATTER came before the Court on Friday, August 17, 2010, at 9:30 a.m. (the "Hearing") upon the Trustee's Motion to Approve Settlement with Michael Szafranski ("Szafranski"), Elana J. Sturm ("Sturm"), ABS Capital Funding, LLC ("ABS"), SKIS Ventures, LLC ("Skis"), Alexa Funding, LLC ("Alexa") and Onyx Options Consultants Corp. ("Onyx")[1](the "Settlement Motion") and Request for Entry of Bar Order (the "Bar Order Request") [DE 808] and the objections of (1) the United States Trustee ("U.S. Trustee") [DE 865]; (2) Gibraltar Private Bank and Trust ("Gibraltar") [DE 872]; (3) Purported "Banyon Noteholders" [DE 873]; (4) T.D. Bank, N.A. ("TD Bank") [DE 874]; and (5) Emess Capital, LLC ("Emess") [DE 877] (collectively, the "Objections").

---

[1] ABS, Skis, Alexa and Onyx are collectively referenced to as the "Szafranski Entities." Szafranski, Sturm and the Szafranski Entities are collectively referenced to as the "Settling Parties."

The Court, having: (i) reviewed and considered the Settlement Motion; (ii) the Objections thereto; (iii) the Trustee's Omnibus Response to the Objection [DE 882]; (iv) taken notice of the status of these proceedings; (v) conducted the Hearing; (vi) heard representations and argument of counsel for the Trustee, and counsel for the Parties filing the Objections; (vii) heard the evidentiary proffer of the Trustee; and (viii) heard the testimony of the Trustee, and it appearing that the relief requested in the Settlement Motion is reasonable and in the best interests of the Debtor's bankruptcy estate, finds good cause to grant the relief requested in the Settlement Motion. Therefore, the Court makes the following findings of fact and conclusions of law:[2]

## FINDINGS OF FACT

### A.    Procedural Background

1.    This case was commenced by four petitioning creditors as an involuntary chapter 11 proceeding on November 10, 2009 [DE 1]. The Court entered an Order for Relief on November 30, 2009 [DE 66]. On November 20, 2009, this Court entered an order directing the appointment of a trustee. [DE 30].

2.    On November 20, 2009, the United States Trustee's office selected Herbert Stettin (the "Trustee") as the Trustee in this case. [DE 35]. On November 25, 2009, the Court ratified Mr. Stettin's appointment as Trustee. [DE 55].

3.    On February 3, 2010, the Trustee filed a complaint, Adversary Proceeding No. 10-02607-RBR-A [Adv. Case DE 1], against defendants, Szafranski and the Szafranski Entities; to recover certain alleged fraudulent and preferential transfers that the Trustee alleges the Defendants received in the months leading up to the collapse of Scott W. Rothstein's

---

[2] The findings of fact and conclusions of law set forth in this Sale Order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed and such finding made applicable in this Order, and to the extent any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed and such finding made applicable in this Order.

("Rothstein") now well known Ponzi scheme.

4. On February 11, 2010, the Trustee filed a First Amended Adversary, asserting, among other things, claims for fraudulent and preferential transfers, constructive trust, and equitable lien against Szafranski and the Szafranski Entities. [Adv. Case DE 12]. The Trustee has asserted that alleged transfers were (i) either actually or constructively fraudulent transfers, (ii) preferential transfers, and/or (iii) transfers made pursuant to usurious loans which, therefore, constitute either avoidable and recoverable transfers or, alternatively, a debt owing to the estate pursuant to Florida's usury laws. [Adv. Case DE 12].

5. On May 3, 2010, the Trustee filed a Second Amended Adversary Complaint (the "Complaint") in the Bankruptcy Court [Adv. Case DE 93], asserting, among other things, claims for fraudulent and preferential transfers, constructive trust, equitable lien, negligence, breach of fiduciary duty and aiding and abetting breaches of fiduciary duty against the Settling Parties (the "Adversary Proceeding"). Prior to the time that the Defendants responded to the Complaint, the parties entered into a settlement. [DE 808].

**B.   The Settlement Motion**

6. As the result of a settlement conference conducted between the parties on May 10, 2010 without a mediator, the Trustee and the Settling Parties agreed to settle all claims that were or could have been asserted in the Adversary Proceeding. Among other things, the Settlement Agreement contemplates the following:

    a. The Settling Parties agreed to pay the Trustee **$6,028,000.00 US**, which sum represents a recovery of approximately 86.3% of Szafranski's and Sturm's total assets. The first part of the settlement payment, **$4,728,000.00 US**, is due within two (2) days of entry of an Order approving the Settlement Agreement. The remaining **$1,300,000.00 US** is to be paid on or before 24 months after the entry of an Order approving the Settlement Agreement (the "Second Payment"). The Second Payment is to be secured by certain real property and improvements located at 133 Camden Drive, Bal Harbour, Florida which is also subject to the Order Granting Verified Emergency Motion and Supporting Memorandum of Law of the Plaintiff, Chapter 11 Trustee Herbert Stettin, for Entry of Preliminary Injunction and for Other Relief and Request for Judicial Notice entered in the Adversary Proceeding [Adv. Case DE 75] on April 23, 2010. [DE 808 at Ex. A ¶¶2-3].

3

 b. Upon election of the Trustee and otherwise, the Szafranski Entities have consented to each of the following (i) the entry of a separate judgment in favor of the Trustee and against the Szafranski Entities substantively consolidating, *nunc pro tunc* (to a date to be selected by the Trustee), for all purposes the assets and liabilities of the Szafranski Entities with and into the Debtor's estate; (ii) the entry of a separate judgment in the amount of **$32.5 million US** against the Szafranski Entities pursuant to Section 548(a)(1)(A) of the Bankruptcy Code; and (iii) a judgment providing that with respect to funds paid by RRA to the Szafranski Entities as recipients, that the Szafranski Entities acted as "conduits" with respect to such transfers. [DE 808 at Ex. A ¶9].

 c. The Settling Parties agree to provide the Trustee with a sworn statement of their existing assets and liabilities, which the Trustee is entitled to independently verify. If the Trustee discovers a material variation, the bar order described below shall be deemed null and void. In return, the Trustee has agreed to dismiss all claims pending in the Adversary Case with prejudice. Each party has agreed to bear their own costs related to the Adversary Case. Szafranski has also agreed to cooperate with the Trustee with his investigation of claims against third parties. [DE 808 at Ex. A ¶16].

 d. The parties request this Court enter a bar order (the "Bar Order") precluding the bringing of any civil claims by creditors of RRA against Szafranski and Sturm, individually or collectively. [DE 808 at Ex. A ¶11].[3]

 7. On July 14, 2010, the Trustee filed the Settlement Motion and Bar Order Request. In summary, the Settlement Agreement provides for the Settling Parties to pay the estate the total sum of $6,028,000.00, representing approximately 86.9% of the total assets of Szafranski and Sturm (including assets claimed exempt). [DE 808].

 8. As a result of revised valuations and disclosures of the assets available to Szafranski to settle the estate's claims, the Settling Parties later agreed to pay the estate the total sum of $6,578,000.00. This revised sum represents approximately 90% of the total assets, including exempt and non-exempt assets, held both individually and jointly by Szafranski and Sturm. [DE 882]. *See* Hrg. Trans. at p. 50:20-23.

 9. In exchange for voluntarily turning over to the Trustee almost all of their assets, the Trustee has agreed to obtain an Order from the Bankruptcy Court enjoining all claims against

---

[3] As a result of negotiations among and between the Trustee, the Official Committee of Unsecured Creditors, T.D. Bank, N.A., and Gibraltar Private Bank and Trust, the form of a revised proposed Bar Order is attached hereto as Exhibit "A."

4

Szafranski and Sturm that are in any manner related to their involvement with RRA and Scott W. Rothstein. [DE 808].

10. Based upon its review of the Certificate of Service [DE 822, 827, 850, 866] concerning the Settlement Motion and the representations of the Trustee's counsel that the notice afforded all third parties who may have claims against Szafranski and Sturm, such service: (a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated under the circumstances to apprise all such third parties of the proposed settlement and Bar Order and their right to attend the hearing on the Motion and object to the entry of this order; (c) constituted due, proper, adequate and sufficient notice to all third parties; (d) satisfies all requirements of the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure; and (e) satisfies all requirements of due process.

11. All persons and third parties who were served with the Settlement Motion and failed to object to the entry of this Order have waived their right to object to the Court's entry of this Order and the Bar Order.

## C.    The Trustee's Business Judgment

12. The Trustee has been licensed to practice law since 1962. He is admitted to the Florida state courts, the Supreme Court of Florida, the District Court for the Southern District of Florida, the 11th Circuit Court of Appeals, and the United States Supreme Court. As a practitioner, the Trustee has tried approximately 400-500 commercial lawsuits. The Trustee served as a state court judge between 1976 and 1979 and has continued to hear cases as a senior judge for the last 11 years. As a judge, the Trustee has presided over thousands of cases, the majority of which were commercial cases. The Trustee has also been involved in a vast number of appellate cases as both a practitioner, and as an appellate judge on the 4th District Court of Appeals, where he served temporarily on three separate occasions. The Trustee has also served as a mediator in over 1,200 commercial disputes in federal and state court cases, and as an arbitrator in dozens of commercial cases. See Hrg. Trans. at pp. 27:1 -

28:21; 44:22-23.

13.  The Trustee supervised and directed the extensive analysis by counsel and forensic experts of transfers made by RRA in the 4 year period prior to the commencement of this case, including to the Settling Parties. This analysis included substantial forensic accounting and documentary forensic work including the review of thousands of pages of e-mails related to the Rothstein/Szafranski relationships and transactions. The Trustee is very familiar with the legal and factual bases of the Estate's claims against Settling Parties, and has worked extensively with the Estate's counsel and forensic experts in evaluating and litigating such claims. The Trustee has personally participated in numerous substantive discussions and meetings with the Settling Parties over the past several months. The parties thoroughly discussed in detail the Estate's claims and the defenses the Settling Parties would have asserted to such claims if a consensual resolution was not reached. The parties exchanged comprehensive transfer analyses, relevant documents and research referenced in support of each parties' positions. See Hrg. Trans. at pp. 28:22 -29:17; 44:22-23.

14.  The Trustee believes, in his business judgment, informed by his nearly five decades as a practitioner, judge and mediator, that the Settlement Agreement is in the best interests of the Estate and its creditors, and that the Settlement overwhelmingly meets the standard for judicial approval of settlements in the 11th Circuit as set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990). See Hrg. Trans. at pp. 52:4-56:16.

15.  The Settlement Agreement is the result of arms-length negotiations between the Trustee and the Settling Parties, and the Court finds that the Trustee and the Settling Parties have acted in good faith in negotiating and entering into the Settlement Agreement. The Court further finds that entry into the Settlement Agreement is a proper exercise of the Trustee's sound business judgment.

6

### D. The Objection Filed by the United States Trustee [DE 865]

16. The United States Trustee filed an objection to the Settlement Motion on the basis that the alleged culpability of the Settling Parties in the Rothstein Ponzi Scheme precludes the entry of a "bar order." [DE 865]. Additionally, counsel for the United States Trustee argued at the Hearing that the settlement motion should not be approved, to the extent it is conditioned on the entry of a "bar order" because the Trustee was likely to achieve a significantly similar result through litigation. *See* Hrg. Trans. at p. 142:14-18.

### E. The Objection Filed by Gibraltar Private Bank & Trust [872]

17. The Objection filed by Gibraltar [DE 872] has been withdrawn, without prejudice to object on any grounds (including but not limited to lack of subject matter jurisdiction or on any other basis, whether or not included in the Objection) to any other settlements or bar orders proposed in the future course of this case.

### F. The Objection Filed by the "Banyon Noteholders" [DE 873]

18. The Banyon Noteholders filed a Limited Objection to the Settlement Motion [DE 873]. The Banyon Noteholders (except for Richard Polidori) did not file proofs of claim in the Debtor's bankruptcy estate. [DE 837 at p. 2]. The Banyon Noteholders do not object to the settlement, but only object to the entry of a bar order as it would enjoin their claims against the Settling Parties. *Id.* The Banyon Noteholders purport to be creditors of a group of entities that provided funding to the Rothstein Ponzi scheme known as the "Banyon Entities" and claim to have direct claims against the Settling Parties, all arising from their involvement in Rothstein's Ponzi scheme.

### G. The Limited Objection Filed by T.D. Bank, N.A. [DE 874]

19. The Limited Objection filed by TD Bank [DE 874] has been voluntarily withdrawn, without prejudice to object on any grounds (including but not limited to lack of subject matter jurisdiction or on any other basis, whether or not included in the Limited Objection) to any other settlements or bar orders proposed in the future course of this case.

### H. The Objection Filed by Emess Capital, LLC [DE 875]

20. The Objection filed by Emess [DE 875] was withdrawn at the Hearing pursuant to an agreement between the Trustee and counsel for Emess. See Hrg. Trans. at pp. 85:25-86:2; 86:19-22.

## CONCLUSIONS OF LAW

### A. Jurisdiction, Parties & Venue.

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Due and proper notice of the Motion and Hearing was given to the parties required under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

### B. Approval of the Settlement Agreement.

The Trustee seeks approval of the Settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim. The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) (citing *In re Air Safety Intern., L.C.*, 336 B.R. 843, 852 (S.D. Fla. 2005)); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

The Eleventh Circuit, in *Justice Oaks*, provided additional guidance regarding whether a settlement should be approved and established a four-part test: (a) the probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. 898 F.2d at 1549.

In passing on proposed settlements, the Court must determine whether a proposed settlement is fair and equitable. *In re Chira*, 367 B.R. at 896. The Court must evaluate whether

the compromise falls below the "lowest point in the range of reasonableness." *In re S&I Invs.*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) (citing *In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993)); *In re Arrow Air, Inc.*, 85 B.R. at 886.

The Settlement Agreement meets the standards for approval set forth by the Eleventh Circuit Court of Appeals in *Justice Oaks* and, therefore, approval of the Settlement Agreement is proper pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Court specifically finds that the Settlement Agreement (i) is fair and reasonable, (ii) falls within the reasonable range of possible litigation outcomes, and (iii) is in the best interests of the estate because full settlement (a) precludes any risks associated with litigation and collection in this matter, (b) increases the dividend available to creditors, and (c) allows for a distribution of sums and proceeds within a reasonable time. In making this determination, the Court has expressly considered: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premises.

## C.  The Bar Order Request

As part and parcel of the Settlement Agreement, the Trustee seeks the entry of a bar order enjoining any party from suing Szafranski or Sturm from any matter arising from or relating to claims against or investments with RRA and Rothstein's Ponzi scheme in accordance with the authority granted the Bankruptcy Court. [DE 808]. No creditor or interested party argued that a bankruptcy court lacks jurisdiction to enter some form of a bar order in appropriate circumstances. Arguments were raised as to the scope of the bar order by Gibraltar, the Banyon Noteholders, TD Bank and Emess. The rights of Gibraltar and TD Bank, as mentioned, to object to any future bar order on any basis, have been and are hereby expressly preserved. The objections of Gibraltar, TD Bank and Emess have been resolved by an agreed form of the bar order. The U.S. Trustee does not dispute that the Court has jurisdiction to enter a bar order,

but objects both to the scope of the proposed bar order and whether a bar order should be entered in this case.

This Court has the inherent power under the Bankruptcy Code, including section 105(a), to issue any order necessary or appropriate to carry out the provisions of Title 11. *Munford v. Munford, Inc. (In re Munford)*, 97 F.3d 449, 454 (11th Cir. 1996) (finding bankruptcy court had authority under section 105(a) to enter order barring claims against certain defendants). The Eleventh Circuit concluded that (i) public policy favors settlements; (ii) the cost of litigation can be burdensome to a bankruptcy estate, and (iii) "bar orders pay an integral role in facilitating settlements." *Munford*, 97 F.3d at 455; *accord In re S&I Invs.*, 421 B.R. at 583–86 (approving a bar order as part of a settlement with the estate).

In this case, the Trustee has testified that the Bar Order Request is an essential and critical element of the Settlement and the willingness of Szafranski and Sturm to pay **$6,578,000.00 US**, a sum representing in excess of 90% of their total assets. The Settlement Agreement expressly provides the Settling Parties the option of terminating the Settlement if the Bar Order Request is not entered. The Trustee has further testified that without a bar order, the Settling Parties would not have had entered into the Settlement. The Trustee has also identified that a significant portion of the non-exempt assets that compromise the payments to be made by Szafranski are funds which were fraudulently transferred by the Debtor to Szafranski.

A bar order is consistent with the pronouncement of the Eleventh Circuit in *Munford* and *In re U.S. Oil and Gas Litigation*, 967 F.2d 489 (11th Cir. 1992), and therefore, entry of a bar order is proper pursuant to 11 U.S.C. § 105(a) and the inherent powers of this Court. *See In re Grau*, 267 B.R. 896 (Bankr. S.D. Fla. 2001); *S.E.C. v. Mut. Benefits Corp. et al.*, Case No. 04-cv-60573-FAM (J. Moreno) (S.D. Fla. May 1, 2007); *In re Reliance Fin. & Inv. Grp., Inc.*, Case No. 02-33249-PGH)(J. Hyman) (Bankr. S.D. Fla. Sept. 19, 2006); *In re Biscayne Lofts, LLC*, Case No. 10-13020-BKC-AJC (J. Cristol) (Bankr. S.D. Fla. Aug. 23, 2010); *see also In re*

*Rothstein Rosenfeldt Adler, P.A.*, Case No. 09-34791-BKC-RBR (J. Ray) (Bankr. S.D. Fla. August 25, 2010)(Order Granting Trustee's Motion to Approve Settlement With Steven and Marcy Lippman Pursuant to Rule 9019 and Request for Entry of Bar Order).

The Court specifically concludes that the Settlement Agreement, generally, and the Bar Order, specifically: (i) is integrally related to the Trustee's claims against Szafranski and Sturm; (ii) is adequately interrelated to those claims; (iii) arises out of the same facts as the Szafranski and Sturm's underlying dispute with the Trustee; (iv) is a critical and required term of the Settlement Agreement; (v) is necessary to achieve the complete resolution of the issues contained in the Settlement Agreement, without which the Settling Parties would not proceed with the Settlement Agreement; and (vi) is fair and equitable under the circumstances. For the avoidance of doubt, and in light of the decisions of the Eleventh Circuit in *Munford* and *U.S. Oil and Gas*, as adopted by this Court in *In re S & I Investments*, the Court finds that it has subject matter jurisdiction to enjoin claims against Szafranski and Sturm, because such claims (i) are interrelated with claims which have been or could be asserted by the Trustee, and (ii) impact the administration of the Debtor's bankruptcy estate.

The U.S. Trustee's Objection to the reasonableness of a bar order in this case has some facial appeal, given Szafranski's alleged culpability. However, the practical reality absent the entry of a bar order is that funds that would otherwise be available to creditors, even given the existence of an injunction, could still be dissipated or forfeited. Given the pending and threatened litigation in state and federal court, "nobody wins" by denying a bar order. It is the Trustee's obligation to maximize recovery in the most efficient manner. That has been done here. Szafranski and Sturm may have "bought peace", but have done so by giving up almost all their assets.

**D.  The Banyon Noteholders are not Prejudiced by the Entry of the Bar Order.**

The Banyon Noteholders, the only party maintaining an objection limited to the scope of the Bar Order, argued at the Hearing that they would receive essentially no benefit in

11

exchange for having their claims against Szafranski barred. It was conceded that the Banyon Noteholders intentionally failed to file a claim in this bankruptcy estate despite having received notice of the claims bar date. To the extent that claims filed by the Banyon Entities are allowed in the Debtor's estate, by settlement or through litigation, the Banyon Noteholders will receive a benefit as a result of the entry of a bar order.

Notwithstanding, any recovery that the Banyon Noteholders could receive as a result of their independent and direct claims against Szafranski, which are directly related to the claims at issue in this bankruptcy proceeding, would either be (i) property fraudulently transferred from the Debtor's bankruptcy estate, or (ii) property subject to the Trustee's fraudulent transfer claims. See In re Van Dieppen, 236 Fed.Appx. 498 (11th Cir. 2007)(fraudulent transfer avoidance claims which arose from a judgment entered on a litigation claim in state court against debtor's prepetition transferees were "property of the estate"); In re Zwirn, 362 B.R. 536, 540-41 (S.D.Fla. 2007)(actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with the estate and with the equitable distribution scheme dependent upon it, and were therefore appropriately stayed under §362(a)(3) of the Bankruptcy Code).

## ORDER

Based upon the foregoing, and after due consideration and good cause appearing for the relief requested in the Settlement Motion, it is

**ORDERED** as follows:

1. Except as otherwise modified herein, the Settlement Motion is **GRANTED** in all respects.

2. Except as otherwise provided herein, the objections of T.D. Bank, N.A., Emess Capital, LLC, and Gibraltar Private Bank and Trust, are deemed **WITHDRAWN.**

3. Except as otherwise provided herein, the objections of the United States Trustee and the Banyon Noteholders are **OVERRULED**.

4. Each and every term and condition of the Settlement Agreement is approved, incorporated and adopted herein and shall be considered as part of this Order.

5. The Bar Order is approved in the form attached hereto as Exhibit A, and shall be entered separately as an Order of this Court..

6. The Court shall retain exclusive jurisdiction to enforce or interpret the terms and conditions of this Order, the Bar Order, the Settlement Agreement, and the performance of all obligations thereunder by the Parties.

###

The Clerk shall serve copies to:

John H. Genovese, Esq.
Charles H Lichtman, Esq.
David C. Cimo, Esq
David L Gay, Esq.
Isaac M Marcushamer, Esq.
Jesus M Suarez, Esq.
Steven D Schneiderman, Esq.