# EXHIBIT B

## Epstein vs. Edwards
Motion for Summary Judgment

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

Case No.: 50 2009 CA 040800XXXXMBAG

JEFFREY EPSTEIN,

    Plaintiff,

vs.

SCOTT ROTHSTEIN, individually, and
BRADLEY J. EDWARDS, individually,

    Defendants,

_____/

## DEFENDANT BRADLEY J. EDWARDS'S MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, Bradley J. Edwards, Esq., by and through his undersigned counsel and pursuant to Rule 1.510, Florida Rules of Civil Procedure, hereby moves for Final Summary Judgment and in support thereof states as follows:

## I.    INTRODUCTION

The pleadings and discovery taken to date show that there is no genuine issue as to any material facts and that Bradley J. Edwards, Esq. is entitled to summary judgment for all claims brought against him in Plaintiff Jeffrey Epstein's Complaint. Not only is there an absence of competent evidence to demonstrate that Edwards participated in any fraud against Epstein, the evidence uncontrovertibly demonstrates the propriety of every aspect of Edwards' involvement in the prosecution of legitimate claims against Epstein. Epstein sexually abused three clients of Edwards – L.M., E.W., and Jane Doe – and Edwards properly and successfully represented them in a civil action against Epstein. Nothing in Edwards's capable and competent representation of his clients can serve as the basis for a civil lawsuit

1

against him.  Allegations about Edwards's participation in or knowledge of the use of the civil actions against Epstein in a "Ponzi Scheme" are not supported by any competent evidence and could never be supported by competent evidence as they are entirely false.

### A.    Epstein's Complaint

Epstein's Complaint essentially alleges that Epstein was defrauded by Edwards, acting in concert with L.M. (a minor female who was sexually abused by Epstein) and Scott Rothstein (President of the Rothstein Rosenfeldt Adler law firm ("RRA") where Edwards worked for a short period of time).  Epstein appears to allege that Edwards joined L.M. and Rothstein in fabricating sexual assault cases against Epstein to "pump" the cases to Ponzi scheme investors.  As described by Epstein, investor victims were told by Rothstein that three minor girls who were sexually assaulted by Epstein: L.M., E.W., and Jane Doe were to be paid up-front money to prevent those girls from settling their civil cases against Epstein.  In Epstein's view, these child sexual assault cases had "minimal value" (Complaint & 42(h)), and Edwards's refusal to force his clients to accept modest settlement offers is claimed to breach some duty that Edwards owed to Epstein.  Interestingly, Epstein never states that he actually made any settlement offers.

The supposed "proof" of the Complaint's allegations against Edwards includes Edwards's alleged contacts with the media, his attempts to obtain discovery from high-profile persons with whom Epstein socialized, and use of "ridiculously inflammatory" language in arguments in court (Complaint & 42(e)).  Remarkably, Epstein has filed such allegations against Edwards despite the fact that Epstein had sexually abused each of Edwards's clients and others while they were minors. Indeed, in recent discovery Epstein has asserted his Fifth Amendment privilege rather than answer questions about the extent of the sexual abuse of his many victims. Even more remarkably, since filing his suit against

Edwards, Epstein has now settled the three cases Edwards handled for an amount that Epstein insisted be kept confidential.  Without violating the strict confidentiality terms required by Epstein, the cases did not settle for the "minimal value" that Epstein suggested in his Complaint.  Because Epstein relies upon the alleged discrepancy between the "minimal value" Epstein ascribed to the claims and the substantial value Edwards sought to recover for his clients, the settlement amounts Epstein voluntarily agreed to pay while these claims against Edwards were pending will be disclosed to the court in-camera.

### B.  Summary of the Argument

Bradley J. Edwards, Esq., is entitled to summary judgment on all of Epstein's frivolous claims for at least two separate reasons.

First, because Epstein has elected to hide behind the shield of his right against self incrimination to preclude his disclosing <u>any</u> relevant information about the criminal activity at the center of his claims, he is barred from prosecuting this case against Edwards.  Under the well-established "sword and shield" doctrine, Epstein cannot seek damages from Edwards while at the same time asserting a Fifth Amendment privilege to block relevant discovery.  His case must therefore be dismissed.

Second and most fundamentally, Epstein's lawsuit should be dismissed because it is not only unsupported by but is also directly contradicted by all of the record evidence. From the beginning, Edwards diligently represented three victims of sexual assaults perpetrated by Epstein.  As explained in detail below, each and every one of Edwards's litigation decisions was grounded in proper litigation judgment about the need to pursue effective discovery against Epstein, particularly in the face of Epstein's stonewalling tactics.  Edwards's successful representation finally forced Epstein to settle and

pay appropriate damages.   Effective and proper representation of child victims who have been repeatedly sexually assaulted cannot form the basis of a separate, "satellite" lawsuit, and therefore Edwards is entitled to summary judgment on these grounds as well.

The truth is the record is entirely devoid of any evidence to support Epstein's claims and is completely and consistently corroborative of Edwards's sworn assertion of innocence.   Put simply, Epstein has made allegations that have no basis in fact.   To the contrary, his lawsuit was merely a desperate measure by a serial pedophile to prevent being held accountable for repeatedly sexually abusing minor females.   Epstein's ulterior motives in filing and prosecuting this lawsuit are blatantly obvious.   Epstein's behavior is another clear demonstration that he feels he lives above the law and that because of his wealth he can manipulate the system and pay for lawyers to do his dirty work - even to the extent of having them assert baseless claims against other members of the Florida Bar.   Epstein's Complaint against Edwards and LM is nothing short of a far-fetched fictional fairy-tale with absolutely no evidence whatsoever to support his preposterous claims.   It was his last ditch effort to escape the public disclosure by Edwards and his clients of the nature, extent, and sordid details of his life as a serial child molester.   Edwards's Motion for Summary Judgment should be granted without equivocation.

## ARGUMENT

**II.  EDWARDS IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF EPSTEIN'S CLAIMS BECAUSE THERE ARE NO MATERIAL DISPUTED FACTS AND THE UNDISPUTED FACTS ESTABLISH THAT EDWARDS'S CONDUCT COULD NOT POSSIBLY FORM THE BASIS OF ANY LIABILITY IN FAVOR OF EPSTEIN**

### A.  The Summary Judgment Standard.

Rule 1.510(c), Florida Rules of Civil Procedure, provides that a court may enter summary judgment when the pleadings, depositions and factual showings reveal that there is no genuine issue of

material fact and that the moving party is entitled to judgment as a matter of law.  *See Snyder v. Cheezem Development Corp.*, 373 So. 2d 719, 720 (Fla. 2d DCA 1979); Rule 1.510(c), Fla. R. Civ. P. Once the moving party conclusively establishes that the nonmoving party cannot prevail, it is incumbent on the nonmoving party to submit evidence to rebut the motion for summary judgment.  *See Holl v. Talcott,* 191 So. 2d 40, 43 (Fla. 1966).  It is not enough for the opposing party merely to assert that an issue of fact does exist. *Fisel v. Wynns*, 667 So.2d 761, 764 (Fla.1996); *Landers v. Milton,* 370 So.2d 368, 370 (Fla.1979) (same).

Moreover, it is well-recognized that the non-moving party faced with a summary judgment motion supported by appropriate proof may not rely on bare, conclusory assertions found in the pleadings to create an issue and thus avoid summary judgment. Instead, the party must produce counter-evidence establishing a genuine issue of material fact. *See Bryant v. Shands Teaching Hospital and Clinics, Inc.,* 479 So.2d 165, 168 (Fla. 1st Dist. Ct. App. 1985); *see also Lanzner v. City of North Miami Beach,* 141 So.2d 626 (Fla. 3d Dist Ct. App. 1962) (recognizing that mere contrary allegations of complaint were not sufficient to preclude summary judgment on basis of facts established without dispute).   Where the nonmoving party fails to present evidence rebutting the motion for summary judgment and there is no genuine issue of material fact, then entry of judgment is proper as a matter of law.  *See Davis v. Hathaway*, 408 So. 2d 688, 689 (Fla. 2d  Dist. Ct. App. 1982); *see also Holl*, 191 So. 2d at 43.

B. **Epstein's Claims Regarding Edwards Have Absolutely No Factual Basis.**

This is not a complicated case for granting summary judgment. To the contrary, this is a simple case for summary judgment because each and every one of Epstein's claims against Edwards lacks any merit whatsoever.[1]

**1.      Edwards is Entitled to Summary Judgment on All Claims Regarding Rothstein's "Ponzi Scheme" Because He Was Simply Not Involved in any Such Scheme.**

**a.  Edwards Had No Involvement in the Ponzi Scheme.**

The bulk of Epstein's claims against Edwards hinge on the premise that Edwards was involved in a Ponzi scheme run by Scott Rothstein. For example, Epstein alleges generally that "Edwards's… actions constitute a fraud upon Epstein as [Rothstein, Rosenfeldt, and Adler], [Scott] Rothstein and the Litigation Team represented themselves to be acting in good faith and with the best interests of their clients in mind at all times when in reality, [Edwards was] . . . acting in furtherance of the investment or Ponzi scheme described herein." Complaint ¶50. Similar broad allegations are scattered willy-nilly throughout the complaint, although none of the allegations provide any substance as to how Edwards might have assisted the Ponzi scheme. *See, e.g., id.*. at ¶¶ 23, 24, 5, 27, 28, 42, 50. In any event, these allegations all fail for one straightforward reason: Edwards was simply not involved in any Ponzi scheme, he has provided sworn testimony and an affidavit in support of that assertion, and there is not (and could never be) any contrary evidence.

Edwards has now been deposed at length in this case. As his deposition makes crystal clear, he had no knowledge of any fraudulent activity in which Scott Rothstein may have been involved. *See, e.g.,* Edwards Depo. at 301-02 (Q:  " . . . [W]ere you aware that Scott Rothstein was trying to market Epstein cases . . . ?"  A: "No.").

---

[1] A decision by the Court to grant summary judgment on Epstein's claims against Edwards would not affect Epstein's claims against Scott Rothstein. Epstein has already chosen to dismiss all of his claims against L.M., the only other defendant named in the suit.

Edwards has supplemented his deposition answers with an Affidavit that declares in no uncertain terms his lack of involvement in any fraud perpetrated by Rothstein. *See, e.g.,* Edwards Affidavit attached to Statement of Undisputed Material Facts as Exhibit "N" at ¶8-10, ¶20, ¶22-23. Indeed, no reasonable juror could find that Edwards was involved in the scheme, as Edwards joined RRA well after Rothstein began his fraud and would have been already deeply in debt.  In fact, the evidence of Epstein's crimes is now clear, and Edwards's actions in this case were entirely in keeping with his obligation to provide the highest possible quality of legal representation for his clients to obtain the best result possible.

In view of this clear evidence rebutting all allegations against him, Epstein must now "produce counter-evidence establishing a genuine issue of material fact." *See Bryant v. Shands Teaching Hospital and Clinics, Inc.,* 479 So.2d 165, 168 (Fla. 1st Dist. Ct. App. 1985).  Epstein cannot do this. Indeed, when asked at his deposition whether he had any evidence of Edwards's involvement, Epstein declined to answer, purportedly on attorney-client privilege grounds:

> Q.  I want to know whether you have any knowledge of evidence that Bradley Edwards personally ever participated in devising a plan through which were sold purported confidential assignments of a structured payout settlement? . . .
> A.  I'd like to answer that question by saying that the newspapers have reported that his firm was engaged in fraudulent structured settlements in order to fleece unsuspecting Florida investors.  With respect to my personal knowledge, I'm unfortunately going to, today, but I look forward to at some point being able to disclose it, today I'm going to have to assert the attorney/client privilege.

*See* Deposition of Jeffrey Epstein, Mar. 17, 2010 (hereinafter "Epstein Depo.") at 67-68.  Therefore summary judgment should be granted for Edwards on all claims involving any Ponzi scheme by Rothstein.

### b.    Epstein Did Not Suffer Any Harm from Allegedly Fraudulent Presentations to Investors.

At various points in his Complaint, Epstein seems to be alleging that he can pursue a claim against Edwards because Rothstein defrauded third-party investors.  Epstein alleges that various investors were given fraudulent pitches by Rothstein and were bilked out of money as a result.  *See, e.g.,* Complaint ¶¶ 28, 29, 30.  Even assuming that the allegations about Rothstein are true (and they certainly are not challenged by this Motion), Edwards is still obviously entitled to summary judgment for the additional reason that Epstein was not harmed by these fraudulent pitches.  Epstein was obviously not present during these presentations.  Indeed, as review of Epstein's Complaint makes clear, he did not even know about the fraud until it became public knowledge through the mass media.  *See, e.g.,* Complaint ¶16 ("The details of this fraudulent scheme are being revealed on a daily basis through various media report and court documents.").

To proceed on any of his causes of action, Epstein is required to prove harm.  *See, e.g., Bortell v. White Mountains Ins. Group, Ltd.*, 2 So.3d 1041, 1047 (Fla. 4th Dist. Ct. App. 2009); *S & I Investments v. Payless Flea Market, Inc.*, 36 So.3d 909, 917 (Fla. 4th Dist. Ct. App. 2010).  Epstein was not harmed by Rothstein's misrepresentations to other people that he knew nothing about. Summary judgment is therefore appropriate on this ground as well.

### c.    Epstein's Allegations of Negligence by Edwards are Unfounded and Not Actionable in Any Event.

At various points in his Complaint Epstein recognizes that Edwards was not involved in any Rothstein Ponzi scheme.  Therefore, seemingly as a fallback, Epstein alleges without explanation that Edwards "should have known" about the existence of this concealed Ponzi scheme.  For example, in his Complaint Epstein alleges: "Upon information and belief, Edwards knew *or should have known* Rothstein was utilizing RRA as a front for the massive Ponzi scheme . . . ."  Complaint at & 26 (emphasis added).  Among other problems, this fallback negligence position suffers the fatal flaw that

8

it does not link at all to the five counts in the complaint, all of which alleged *intentional* fraud or conspiracy.

The five counts in the Complaint all allege criminal – i.e., intentional – activity.  The five counts are: Count 1 – Florida Civil Remedies for Criminal Practices Act (FCRCPA); Count 2 – Florida RICO; Count 3 – Abuse of Process; Count 4 – Fraud; and Count 5 – Conspiracy to Commit Fraud.  To take Count 1 as an example, Epstein alleges that Edwards "engaged in pattern of criminal activity as defined in § 772.102(3) and (4), Fla Stat. (2009)."  Epstein then alleges (without any elaboration) that Edwards committed such crimes as fraud, extortion, and perjury – crimes that are listed as actionable under the FCRCPA.    *See* Fla. Stat. Ann. § 772.102(1)(a).   Crimes such as these require proof of criminal intent.  Proving the crime of perjury, for example, requires proof that "testimony was in fact false testimony, and that [the defendant] *knew of its falsity and willfully and with deliberation swore to it as true*."  *Rader v. State*, 52 So.2d 105, 108 (Fla. 1951) (emphasis added).  Proving the crime of fraud requires proof that the defendant acted with "*intent to defraud." Pizzo v. State*, 455. So.2d 1203, 1207 (Fla. 2006) (emphasis added); *see also Curd v. Mosaic Fertilizer, LLC,* ___ So.3d ___, 2010 WL 2400384 at *15 (describing as fraud, conversion, civil theft, and abuse of process as "*intentional* torts" that require "proof of intent").  Moreover, not only do the underlying crimes require proof of criminal intent, but the FCRCPA itself requires proof that a defendant must have acted "with criminal intent," Fla. Stat. Ann. § 772.103(1), or "conspire[d]," § 772.103(4), in order for a cause of action to proceed. Nothing in the statute allows a claim to move forward on a mere allegation of negligence.

Epstein's negligence claim is also deficient because it simply fails to satisfy the requirements for a negligence cause of action:

> "Four elements are necessary to sustain a negligence claim: 1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.  2. A failure on the

9

[defendant's] part to conform to the standard required: a breach fo the duty . . . . 3. A reasonably close causal connection between he conduct and the resulting injury. This is what is commonly known as 'legal cause,' or 'proximate cause,' and which includes the notion of cause in fact. 4. Actual loss or damage.

*Curd v. Mosaic Fertilizer, LLC*, ___ So.2d ___, 2010 WL 2400384 at *9 (Fla. 2010). Epstein does not allege a particular duty on the part of Edwards that has been breached. Nor does Epstein explain how any breach of the duty might have proximately caused him actual damages. Summary judgment is therefore appropriate for these reasons as well.

Finally, for the sake of completeness, it is worth noting briefly that no reasonable jury could find Edwards to have been negligent in failing to anticipate that a managing partner at his law firm would be involved in an unprecedented Ponzi scheme. Scott Rothstein deceived not only Edwards but also more than 60 other reputable lawyers at a major law firm. *Cf* . *Sun Sentinel, Fort* Lauderdale, Dec. 11, 2009, 2009 WLNR 25074193 at *1 ("Sure, some outlandish John Grisham murder plot[s] sound far-fetched. But if you asked me a few months ago if Scott Rothstein was fabricating federal court orders and forging a judge's signature on documents to allegedly fleece his friends, as federal prosecutors allege, I would have said that was far-fetched, too."). No reasonable lawyer could have expected that a fellow member of the bar would have been involved in such a plot. Nobody seemed to know of Rothstein's Ponzi scheme, not even his best friends, or the people he did business with on a daily basis, or even his wife. Many of the attorneys at RRA had been there for years and knew nothing. Edwards was a lawyer at RRA for less than 8 months and had very few personal encounters with Rothstein during his time at the firm, yet Epstein claims that he should have known of Rothstein's intricate ponzi scheme. No doubt for this reason the U.S. Attorney's Office has now listed Edwards as a "victim" of Rothstein's crimes. *See* Statement of Undisputed Facts filed contemporaneously.

10

Epstein's Complaint does not offer any specific reason why a jury would conclude that Edwards was negligent, and he chose not to offer any explanation of his claim at his deposition. Accordingly, Edwards is entitled to summary judgment on all claims against him relating to Rothstein's Ponzi scheme.

### 2. Edwards is Entitled to Summary Judgment on All Claims Regarding "Pumping the Cases" Because He Was Properly Pursuing the Interests of His Three Clients Who Had Been Sexually Abused by Epstein.

The next claim that Epstein advances is that Edwards somehow improperly enhanced the value of the three civil cases he had filed against Epstein. Edwards represented three young women – L.M., E.W., and Jane Doe – by filing civil suits against Epstein for his sexual abuse of them while they were minors. Epstein purports to find a cause of action for this by alleging that Edwards somehow was involved in "'pumping' these three cases to investors." Complaint at ¶51; *see also id.* at ¶¶36, 41, 42(f), 42(k) (similar allegations of "pumping" the cases).

As just explained, to the extent that Epstein is alleging that Edwards somehow did something related to the Ponzi scheme, those allegations fail for the simple reason that Edwards was not involved in any such scheme. Edwards, for example, could not have possibly "pumped" the cases to investors when he never participated in any communication with investors.

Epstein's "pumping" claims, however, fail for an even more basic reason: Edwards was entitled – indeed ethically obligated as an attorney – to secure the maximum recovery for his clients during the course of his legal representation. As is well known, "[a]s an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." Fla. Rules of Prof. Conduct, Preamble. Edwards therefore was required to pursue (unless otherwise instructed by his clients) a maximum

11

recovery against Epstein. Edwards, therefore, cannot be liable for doing something that his ethical duties as an attorney required.[2]

Another reason that Epstein's claims that Edwards was "pumping" cases for investors fails is that Edwards filed all three cases almost a year before he was hired by RRA or even knew of Scott Rothstein. Epstein makes allegations that the complaints contained sensational allegations for the purposes of luring investors; however, language in the complaints remained virtually unchanged from the first filing in 2008 and from the overwhelming evidence the Court can see for itself that all of the facts alleged by Edwards in the complaints were true.

Epstein ultimately paid to settle all three of the cases Edwards filed against him for more money than he paid to settle any of the other claims against him. At Epstein's request, the terms of the settlement were kept confidential. The sum that he paid to settle all these cases is therefore not filed with this pleading and will be provided to the court for in-camera review. Epstein chose to make this payment as the result of a federal court ordered mediation process, which he himself sought (over the objection of Jane Doe, Edwards' client in federal court) in an effort to resolve the case. *See* Defendant's Motion for Settlement Conference, or in the Alternative, Motion to Direct Parties back to Mediation, *Doe v. Epstein*, No. 9:08-CV-80893 (S.D. Fla. June 28, 2010) (Marra, J.) (doc. #168) attached hereto as Exhibit "A". Notably, Epstein sought this settlement conference – and ultimately made his payments as a result of that conference - in July 2010, more than seven months after he filed this lawsuit against Edwards. Accordingly, Epstein could not have been the victim of any scheme to "pump" the cases against him, because he never paid to settle the cases until well after Edwards had left RRA and had severed all connection with Scott Rothstein (December 2009).

---

[2] In a further effort to harass Edwards, Epstein also filed a bar complaint with the Florida Bar against Edwards. The Florida Bar has dismissed that complaint. *See* Statement of Undisputed Facts.

In addition, if Epstein had thought that there was some improper coercion involved in, for example, Jane Doe's case, his remedy was to raise the matter before Federal District Court Judge Kenneth A. Marra who was presiding over the matter. Far from raising any such claim, Epstein simply chose to settle that case. He is therefore now barred by the doctrine of res judicata from somehow re-litigating what happened in (for example) the Jane Doe case. "The doctrine of res judicata makes a judgment on the merits conclusive 'not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." *AMEC Civil, LLC v. State Dept. of Transp.*, ___ So.2d ___, 2010 WL 1542634 at *2 (Fla. 1st Dist. Ct. App. 2010) (*quoting Kimbrell v. Paige*, 448 So.2d 1009, 1012 (Fla. 1984). Obviously, any question of improper "pumping" of a particular case could have been resolved *in that very case* rather than now re-litigated in satellite litigation.

> **3. Edwards is Entitled to Summary Judgment on Claims Regarding Alleged Abuse of Process Because He Acted Properly Within the Boundaries of the Law in Pursuit of the Legitimate Interests of his Clients.**

Epstein's Complaint also raises several claims of "abuse of process." These claims appear to be related to those just discussed, but culminate in a separate cause of action – count 3 – alleging "abuse of process." An abuse of process claim requires proof of three elements: "(1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." *S & I Investments v. Payless Flea Market, Inc.*, 36 So.3d 909, 917 (Fla. 4th Dist. Ct. App. 2010) (internal citation omitted). In fact, this Court is very familiar with this cause of action, as Edwards has correctly stated this cause in his counterclaim against Epstein. Edwards is entitled to summary judgment because Epstein cannot

13

prove these elements.

The first element of an abuse of process claim is that a defendant made "an illegal, improper, or perverted use of process." On the surface, Epstein's Complaint appears to contain several allegations of such improper process. On examination, however, each of these allegations amounts to nothing other than a claim that Epstein was unhappy with some motion or argument made by Edwards. This is not the stuff of an abuse of process claim, particularly where Epstein fails to allege that he was required to do something as the result of Edwards' pursuit of the claims against him. *See Marty v. Gresh*, 501 So.2d 87, 90 (Fla. 1st Dist. Ct. App. 1987) (affirming summary judgment on an abuse of process claim where "appellant's lawsuit caused appellee to do nothing against her will").

In any event, none of the allegations of "improper" process can survive summary judgment scrutiny, because every action Edwards took was entirely proper. For purposes of completeness, the following is a point-by-point refutation of Epstein's allegations:

- Complaint ¶42(a): Edwards properly included listed damages in Jane Doe's federal action of more than $50,000,000, because those were the damages that Edwards was going to seek at trial on behalf of Jane Doe. *See* Statement of Undisputed Facts.

- Complaint ¶42(b): Edwards was entitled to help Jane Doe exercise her First Amendment rights to criticize the unduly lenient plea bargain he received in a criminal case, *See* Statement of Undisputed Facts, and criticizing what happened in the *criminal* case is not actionable in an unrelated civil case;

- Complaint ¶ 42(c): Edwards only asked reasonable questions of Epstein at his deposition, all of which related to the merits of the case against Edwards. *See* Statement of Undisputed Facts.

- Complaint ¶ 42(d): Edwards only pursued legitimate discovery designed to further the cases filed against Epstein. *See* Statement of Undisputed Facts.

- Complaint ¶ 42(e): Edwards did not made "ridiculously inflammatory and sound-bite rich" statements, but rather made statements supported by the evidence. For example, there is ample evidence that Epstein has abused more than 400 children, *See* Statement of Undisputed Facts, a fact that Epstein has always invoked his Fifth Amendment right of silence regarding rather than elaborate.

14

- Complaint ¶ 42(f): Edwards properly filed a motion seeking to restrain Epstein's fraudulent transfer of assets in federal court where Edwards had evidence that Epstein was titling cars and other assets in the names of other persons, *See* Statement of Undisputed Facts.

Epstein also fails to meet the second element of an abuse of process claim: that Edwards had some sort of ulterior motive. The case law is clear that on an abuse of process claim a "plaintiff must prove that the process was used for an immediate purpose other than that for which it was designed." *S&I Investments v. Payless Flea Market, Inc.*, 36 So.3d 909, 917 (Fla. 4th Dist. Ct. App. 2010) (*citing Biondo v. Powers*, 805 So.2d 67, 69 (Fla. 4th Dist. Ct. App. 2002). As a consequence, "[w]here the process was used to accomplish the result for which it was intended, regardless of an incidental or concurrent motive of spite or ulterior purpose, there is no abuse of process." *Id.* (internal quotation omitted). Here, Edwards has fully denied any improper motive, *See* Statement of Undisputed Facts, and Epstein has no evidence of any such motivation. Indeed, it is revealing that Epstein chose not to ask even a single question about this subject during the deposition of Edwards. In addition, all of the actions that Epstein complains about were in fact used for the immediate purpose of furthering the lawsuits filed by L.M., E.W., and Jane Doe. In other words, these actions all "accomplished the results for which they were intended" -- whether it was securing additional discovery or presenting a legal issue to the court handling the case. Accordingly, Edwards is entitled to summary judgment on any claim that he abused process for this reason as well.

**4.    Edwards is Entitled to Summary Judgment on Claims Regarding Pursuit of Discovery Concerning Epstein's Friends Because All Such Efforts Were Reasonably Calculated to Lead to Relevant and Admissible Testimony About Epstein's Abuse of Minor Girls.**

Epstein has also alleged that Edwards improperly pursued discovery from some his close friends. Such discovery, Epstein claims, was improper because Edwards knew that these individuals lacked any discoverable information about the sexual assault cases against Epstein.

Here again, Edwards is entitled to summary judgment, as each of the friends of Epstein were reasonably believed to possess discoverable information. The undisputed facts show the following with regard to each of the persons raised in Epstein's complaint:

- Complaint ¶38(i): With regard to Donald Trump, Edwards had sound legal basis for believing Mr. Trump had relevant and discoverable information. *See* Statement of Undisputed Facts.

- Complaint ¶38(ii): With regard to Alan Dershowitz (Harvard Law Professor), Edwards had sound legal basis for believing Mr. Dershowitz had relevant and discoverable information. *See* Statement of Undisputed Facts.

- Complaint ¶38(iii): With regard to former President Bill Clinton, Edwards had sound legal basis for believing former President Clinton had relevant and discoverable information. *See* Statement of Undisputed Facts.

- Complaint ¶38(iv): With regard to former Sony Record executive Tommy Mottola, Edwards was not the attorney that noticed Mr. Mottola's deposition. *See* Statement of Undisputed Facts.

- Complaint ¶38(v): With regard to illusionist David Copperfield, Edwards had sound legal basis for believing Mr. Copperfield had relevant and discoverable information. *See* Statement of Undisputed Facts.

- Complaint ¶40(i): With regard to former New Mexico Governor Bill Richardson, Edwards had sound legal basis for naming Former New Mexico Governor Bill Richardson on his witness list. *See* Statement of Undisputed Facts.

It is worth noting that the standard for discovery is a very liberal one. To notice someone for a deposition, of course, it is not required that the person deposed actually end up producing admissible evidence. Otherwise, every deposition that turned out to be a false alarm would lead to an "abuse of process" claim. Moreover, the rules of discovery themselves provide that a deposition need only be

"reasonably calculated to *lead to* the discovery of admissible evidence." Fla. R. Civ. P. 1.280(b) (emphasis added).

Moreover, the discovery that Edwards pursued has to be considered against the backdrop of Epstein's obstructionist tactics. As the Court is aware, in both this case and all other cases filed against him, Epstein has taken the Fifth rather than answer any substantive questions. Epstein has also helped secure attorneys for his other household staff who assisted in the process of recruiting the minor girls, who in turn also asserted their Fifth Amendment rights rather than explain what happened behind closed doors in Epstein's mansion in West Palm Beach. *See* Statement of Undisputed Facts. It is against this backdrop that Edwards followed up on one of the only remaining lines of inquiry open to him: discovery aimed at Epstein's friends who might have been in a position to corroborate the fact that Epstein was sexually abusing young girls.

In the context of the sexual assault cases that Edwards had filed against Epstein, any act of sexual abuse had undeniable relevance to the case – even acts of abuse Epstein committed against minor girls other than L.M., E.W., or Jane Doe. Both federal and state evidence rules make acts of child abuse against other girls admissible in the plaintiff's case in chief as proof of "modus operandi" or "motive" or "common scheme or plan." *See* Fed. R. Evid. 415 (evidence of other acts of sexual abuse automatically admissible in a civil case); Fla. Stat. Ann. 90.404(b) (evidence of common scheme admissible); *Williams v. State*, 110 So.2d 654 (Fla. 1959) (other acts of potential sexual misconduct admissible).

A second reason exists for making discovery of Epstein's acts of abuse of other minor girls admissible. Juries considering punitive damages issues are plainly entitled to consider "the existence and frequency of similar past conduct." *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S.

17

443, 462 n.28 (1993). This is because the Supreme Court recognizes "that a recidivist may be punished more severely than a first offender . . . [because] repeated misconduct is more reprehensible than an individual instance of malfeasance." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 577 (1996) (supporting citations omitted). In addition, juries can consider other similar acts evidence as part of the deterrence calculation in awarding punitive damages, because "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing . . . that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Id.* at 576-77. In the cases Edwards filed against Epstein, his clients were entitled to attempt to prove that Epstein "repeatedly engaged in prohibited conduct" – i.e., because he was a predatory pedophile, he sexually assaulted dozens and dozens of minor girls. The discovery of Epstein's friends who might have had direct or circumstantial evidence of other acts of sexual assault was accordingly entirely proper. Edwards is therefore entitled summary judgment on all claims regarding discovery of Epstein's friends.

5. **Edwards is Entitled to Summary Judgment on Claims that He Should Have Known That the Three Cases Had "Minimal" Value Because the Cases in Fact Had Substantial Value.**

A final claim made by Epstein is that Edwards "knew or should have known that their three filed cases were weak and had minimal value." Complaint ¶42(h). It is now no longer necessary to speculate about what the value of the three cases is. Epstein paid to settle all three cases. Epstein has insisted that the sum he paid remain confidential. As such, the Settlement Agreements have not been attached as an Exhibit, but can be shown to the Court *in camera*. In light of the sum that was paid, no reasonable jury could now find that the cases had "minimal value." Accordingly, Edwards is entitled to summary judgment on these claims as well.

**III.    EPSTEIN'S LAWSUIT MUST BE DISMISSED BECAUSE OF HIS REFUSAL TO PARTICIPATE IN REASONABLE DISCOVERY.**

As is readily apparent from the facts of this case, Epstein has filed a lawsuit but then refused to allow any real discovery about the merits of his case.   Instead, when asked hard questions about whether he has any legitimate claim at all, Epstein has hidden behind the Fifth Amendment.   As a result, under the "sword and shield doctrine" widely recognized in Florida caselaw, his suit must be dismissed.

"[T]he law is well settled that a plaintiff is not entitled to both his silence and his lawsuit." *Boys & Girls Clubs of Marion County, Inc. v. J.A.,* 22 So.3d 855, 856 (Fla. 5th Dist. Ct. App. 2009) (Griffin, J., concurring specially).   Thus, "a person may not seek affirmative relief in a civil action and then invoke the fifth amendment to avoid giving discovery, using the fifth amendment as both a 'sword and a shield.'"   *DePalma v. DePalma*, 538 So.2d 1290, 1290 (Fla. 4th Dist. Ct. App. 1989) (*quoting DeLisi v. Bankers Insurance Co.*, 436 So.2d 1099 (Fla. 4th Dist. Ct. App. 1983)).   Put another way, "[a] civil litigant's fifth amendment right to avoid self-incrimination may be used as a shield but not a sword.   This means that a plaintiff seeking affirmative relief in a civil action may not invoke the fifth amendment and refuse to comply with the defendant's discovery requests, thereby thwarting the defendant's defenses."   *Rollins Burdick Hunter of New York, Inc. v. Euroclassic Limited, Inc.*, 502 So. 2d 959 (Fla. 3rd Dist. Court App. 1983).

Here, Epstein is trying to do precisely what the "well settled" law forbids.   Specifically, he is trying to obtain "affirmative relief" – i.e., forcing Edwards to pay money damages – while simultaneously precluding Edwards from obtaining legitimate discovery at the heart of the allegations that form the basis for the relief Epstein is seeking.   As recounted more fully in the statement of undisputed facts, Epstein has refused to answer such basic questions about his lawsuit as:

- "Specifically what are the allegations against you which you contend Mr. Edwards ginned up?"

- "Well, which of Mr. Edwards' cases do you contend were fabricated?"

- "Is there anything in L.M.'s Complaint that was filed against you in September of 2008 which you contend to be false?"

- "I would like to know whether you ever had any physical contact with the person referred to as Jane Doe in that [federal] complaint?"

- "Did you ever have any physical contact with E.W.?"

- "What is the actual value that you contend the claim of E.W. against you has?"

The matters addressed in these questions are the central focus of Epstein's claims against Edwards. Epstein's refusal to answer these and literally every other substantive question put to him in discovery has deprived Edwards of even a basic understanding of the evidence alleged to support claims against him. Moreover, by not offering any explanation of his allegations, Epstein is depriving Edwards of any opportunity to conduct third party discovery and opportunity to challenge Epstein's allegations.

It is the clear law that "the chief purpose of our discovery rules is to assist the truth-finding function of our justice system and to avoid trial by surprise or ambush," *Scipio v. State*, 928 So.2d 1138 (Fla.2006), and "full and fair discovery is essential to these important goals," *McFadden v. State*, 15 So.3d 755, 757 (Fla. 4th Dist. Ct. App. 2009). Accordingly, it is important for the Court to insure "not only compliance with the technical provisions of the discovery rules, but also adherence to the purpose and spirit of those rules in both the criminal and civil context." *McFadden*, 15 So.3d at 757. Epstein has repeatedly blocked "full and fair discovery," requiring dismissal of his claim against Edwards.

## IV.    EDWARDS IS ENTITLED TO ADVERSE INFERENCES FROM EPSTEIN'S INVOCATION OF THE FIFTH AMENDMENT AND THEREFORE TO SUMMARY JUDGMENT ON ALL OF EPSTEIN'S CLAIMS.

20

Edwards is entitled to summary judgment on the claims against him for a second and entirely independent reason: Epstein's repeated invocations of the Fifth Amendment raise adverse inferences against him that leave no possibility that a reasonable factfinder could reach a verdict in his favor. In ruling on a summary judgment motion, the court must fulfill a "gatekeeping function" and should ask whether "a *reasonable* trier of fact could possibly" reach a verdict in favor of the plaintiff. *Willingham v. City of Orlando*, 929 So.2d 43, 48 (Fla. 5th Dist. Ct. App. 2006) (emphasis added). Given all of the inferences that are to be drawn against Epstein, no reasonable finder of fact could conclude that Epstein was somehow the victim of improper civil lawsuits filed against him. Instead, a reasonable finder of fact could only find that Epstein was a serial molester of children who was being held accountable through legitimate suits brought by Edwards and others on behalf of the minor girls that Epstein victimized.

"[I]t is well-settled that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976); *accord Vasquez v. State*, 777 So.2d 1200, 1203 (Fla. App. 2001). The reason for this rule "is both logical and utilitarian. A party may not trample upon the rights of others and then escape the consequences by invoking a constitutional privilege – at least not in a civil setting." *Fraser v. Security and Inv. Corp.*, 615 So.2d 841, 842 (Fla. 4th Dist. Ct. App. 1993). And, in the proper circumstances, "'Silence is often evidence of the most persuasive character.'" *Fraser v. Security and Inv. Corp.*, 615 So.2d 841, 842 (Fla. 4th Dist. Ct. App. 1993) (*quoting United States ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 153-154 (1923) (Brandeis, J.).

In the circumstances of this case, a reasonable finder of fact would have "evidence of the most persuasive character" from Epstein's repeated refusal to answer questions propounded to him. To

provide but a few examples, here are questions that Epstein refused to answer and the reasonable inference that a reasonable finder of fact would draw:

- Question not answered: "Specifically what are the allegations against you which you contend Mr. Edwards ginned up?" Reasonable inference: No allegations against Epstein were ginned up.

- Question not answered: "Well, which of Mr. Edwards' cases do you contend were fabricated?" Reasonable inference: No cases filed by Edwards against Epstein were fabricated.

- Question not answered: "Did sexual assaults ever take place on a private airplane on which you were a passenger?" Reasonable inference: Epstein was on a private airplane while sexual assaults were taking place.

- Question not answered: "How many minors have you procured for prostitution?" Reasonable inference: Epstein has procured multiple minors for prostitution.

- Question not answered: "Is there anything in L.M.'s Complaint that was filed against you in September of 2008 which you contend to be false?" Reasonable inference: Nothing in L.M.'s complaint filed in September of 2008 was false – i.e., as alleged in L.M.'s complaint, Epstein repeatedly sexually assaulted her while she was a minor and she was entitled to substantial compensatory and punitive damages as a result.

- Question not answered: "I would like to know whether you ever had any physical contact with the person referred to as Jane Doe in that [federal] complaint?" Reasonable inference: Epstein had physical contact with minor Jane Doe as alleged in her federal complaint.

- Question not answered: "Did you ever have any physical contact with E.W.?" Reasonable inference: Epstein had physical contact with minor E.W. as alleged in her complaint.

- Question not answered: "What is the actual value that you contend the claim of E.W. against you has?" Reasonable inference: E.W.'s claim against Epstein had substantial actual value.

Without repeating each and every invocation of the Fifth Amendment that Epstein has made and the reasonable inferences to be drawn from those invocations of privilege, the big picture is unmistakably clear: No reasonable finder of fact could rule in Epstein's favor on his claims against

Edwards. Accordingly, Edwards is entitled to summary judgment based on the Fifth Amendment inferences that the jury would draw.

The inferences against Epstein are not limited to those arising from his privilege assertions. Epstein's guilt is also reasonably inferred from his harassment of, intimidation of, efforts to exercise control over, and limitation of access to witnesses who might testify against him.

Epstein's efforts to intimidate his victims support the inference that Epstein knew that they were going to provide compelling testimony against him. The evidence that Epstein tampered with witnesses (later designated as his accomplices and co-conspirators) will be admissible to demonstrate his consciousness of guilt. "[I]t is precisely because of the egregious nature of such conduct that the law expressly permits the jury to make adverse inferences from a party's efforts to intimidate witnesses . . . ." *Jost v. Ahmad*, 730 So.2d 708, 711 (Fla. 2nd Dist. Ct. App. 1998) (internal quotation omitted). To be clear, Epstein's attempt to tamper with witnesses is "not simply admissible as impeachment evidence of the tampering party's credibility. The opposing party is entitled to introduce facts regarding efforts to intimidate a witness as *substantive evidence*." *Id.* at 711 (emphasis in original) (internal citation omitted). This substantive evidence of Epstein's witness intimidation provides yet another reason why no reasonable jury could find in favor of his claims against Edwards.

## CONCLUSION

For all the foregoing reasons, defendant, the Court should grant defendant Bradley J. Edwards, Esq., summary judgment in his favor on all claims filed against him plaintiff Jeffrey Epstein, and any other relief that the Court deems just and proper.

23

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 22nd, 2010 a copy of the foregoing has been served via U.S. Mail and email transmittal to all those on the attached service list.

Jack Scarola
Searcy, Denney, Scarola, Barnhart & Shipley
2139 Palm Beach Lakes Blvd
West Palm Beach, FL 33409
(561) 686-6300
(561) 684-5816 (fax)

By:

JACK SCAROLA
Florida Bar No.: 169440

## SERVICE LIST

Christopher E. Knight, Esq.
 Joseph L. Ackerman, Esq.
FOWLER WHITE BURNETT P.A.
901 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401

Jack Alan Goldberger, Esq.
Atterbury Goldberger et al.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401

Marc S. Nurik, Esq.
Law Offices of Marc S. Nurik
One E. Broward Blvd., Suite 700
Fort Lauderdale, FL 33301

Gary M. Farmer, Jr.
Farmer, Jaffe, Weissing,
Edwards, Fistos & Lehrman, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301

*DEFENDANT BRADLEY J. EDWARDS'S MOTION FOR FINAL SUMMARY JUDGMENT*
*Epstein v. Edwards, et al.*
*Case No.: 50 2009 CA 040800XXXXMBAG*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-CIV-80893-MARRA/JOHNSON

JANE DOE,

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

## DEFENDANT EPSTEIN'S MOTION FOR SETTLEMENT CONFERENCE, OR IN THE ALTERNATIVE, MOTION TO DIRECT PARTIES' BACK TO MEDIATION

Defendant, JEFFREY EPSTEIN, by and through his undersigned attorneys, pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Florida, moves this Court for an order requiring the parties to attend a Settlement Conference before Magistrate Judge Linnea R. Johnson, or in the alternative, for an Order directing the parties to reconvene at a second mediation on or before July 1, 2010, and as grounds set forth would state:

1.  The above-styled matter is currently scheduled on the Court's trial docket beginning July 19, 2010. (D.E. #119, Order Re-Setting Trial Date and Pretrial Deadlines). The Court's Mandatory Pretrial Stipulation and Motions in Limine deadlines are set for July 1, 2010. In this regard, if the parties could reach an agreement at a settlement conference or a mediation before these pre-trial deadlines, it would result in substantial conservation of judicial resources and preparation time.

2.  The parties attended mediation on April 5, 2010, at Matrix Mediation, LLC, with Rodney Romano serving as mediator, but were unable to reach an agreement. (See D.E. #139).

Doe v. Epstein
CASE NO.: 08-CIV-80893-MARRA/JOHNSON
Page 2

3.   Since the April 5, 2010 mediation, additional discovery has been completed and exchanged, including each parties' psychological (Plaintiff) and psychiatric (Defendant) expert depositions.   As well, Defendant filed his Motion for Summary Judgment and Motion for Bifurcation.   Both parties have exchanged witness and exhibit lists.   Each party will be filing extensive Motions in Limine.   Plaintiff's Trial Witness List has identified over 170 potential witnesses, and further, Plaintiff identifies over 140 trial exhibits, including composite exhibits that are hundreds of pages in length.   It is conceivable this case could last 12- 20 trial days.

4.   Additionally, since the parties attended mediation on April 5, 2010, Defendant has resolved all pending lawsuits, including Plaintiff, C.L. (Case No.: 10-80447) and JANE DOES Nos. 2-8  (Case Nos.: 08-80119, 08-80232, 08-08380, 08-80381, 08-80994, 08-80993, 08-80802),  C.M.A. (Case  No.08-80811), Jane Does Nos. 101, 102 and 103 (Case Nos.  09-80591, 09-80656, 10-80309),  another Jane Doe (Case No. 08-80804), Jane Doe II (Case No. 09-80469), as well as other non-filed claims.   Furthermore, Defendant has also resolved three state court claims.   The only cases not resolved are this case and two (2) cases in state court (all three Plaintiffs are represented by Plaintiff's counsel, Brad Edwards, Esq. and his firm). [1]

5.   Plaintiffs  in other filed cases were represented by various law firms as the court is aware.

6.   With the additional discovery completed to date and with the motions, trial preparation and judicial rulings necessary to try this case,  all yet to be done, Defendant

---

[1]   There is also a case styled L.M. v. Jeffrey Epstein,  CASE NO.: 09-CIV-81092 – MARRA/JOHNSON, which was never served on the Defendant.  Defendant has filed a Motion to Dismiss.

Doe v. Epstein
CASE NO.: 08-CIV-80893-MARRA/JOHNSON
Page 3

believes that a settlement conference or mediation is in the best interest of both parties to attempt resolution. There is no prejudice to either party.

      7. Therefore, Defendant requests the Court issue an order directing the parties to attend a Settlement Conference before Magistrate Judge Johnson or that the Court direct the parties to attend a further mediation before July 1, 2010. Both Magistrate Judge Johnson and Rodney Romano (as the mediator in this case) are very familiar with the particular case and other claims that were asserted.

      8. Defendant's Counsel has spoken with the secretary for the mediator, Rodney Romano, and she believes that he would be able to schedule a 2-3 hour mediation on short notice this week.

      WHEREFORE, Defendant, JEFFREY EPSTEIN respectfully requests the Court to enter an Order directing the parties to attend a Settlement Conference before Magistrate Judge Linnea R. Johnson, or in the alternative, a mediation on or before July 1, 2010.

### Rule 7.1 Certification

      I hereby certify that counsel has communicated by telephone with Plaintiff's counsel in a good faith effort to resolve the issues set forth herein. Plaintiff's position is that the parties have already complied with the mediation requirements.

                    By: s/Robert D. Critton, Jr.
                    Robert D. Critton, Jr.
                    Michael J. Pike
                    Attorneys for Defendant Epstein

Doe v. Epstein
CASE NO.: 08-CIV-80893-MARRA/JOHNSON
Page 4

### Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed

with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is

being served this day on all counsel of record identified on the following service list in

the manner specified via transmission of Notices of Electronic Filing generated by

CM/ECF on this 28th day of June, 2010:

Brad Edwards, Esq.
Farmer, Jaffe, Weissing, Edwards, Fistos
& Lehrman, PL
425 N. Andrews Ave.
Suite #2
Fort Lauderdale, FL 33301
Phone: 954-524-2820
Fax: 954-524-2822
Brad@pathtojustice.com

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101
Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax
cassellp@law.utah.edu
*Co-counsel for Plaintiff*

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
561-835-8691 Fax
jagesq@bellsouth.net
*Co-Counsel for Defendant Jeffrey Epstein*

Respectfully submitted,

By: /s/ Robert D. Critton, Jr.
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No. 224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER &
COLEMAN, LLP
303 Banyan Boulevard, Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/243-0164 Fax
*(Co-Counsel for Defendant Jeffrey Epstein)*