[TAGGED for publication]

**ORDERED in the Southern District of Florida on** ___01-06-12___.



*Raymond B. Ray*
Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.,      Case No. 09-34791-BKC-RBR
                                       Chapter 11
Debtor.
_____/

### ORDER DENYING MOTION TO ABATE CLAIMS
### AGAINST NET LOSERS AND JOINDERS THEREIN

THIS MATTER came before the Court on October 31, 2011 and November 28, 2011, upon (i) the Victim-Creditors' Motion to Abate Claims Against Net Loser Victims (D.E. 2066) (the "Motion to Abate") filed by Pirulin Group, LLC, Caro Group, LLC, Exito Investment Group, LLC, Marmarser Investment Group, LLC, Network Resources, LLC, New Miami Group, LLC, OPMonies 2, LLC, Platinum Estates, Inc., and Interamerican Holding, LLC, (collectively, "Pirulin Group"),[1] (ii) the Official Committee of Unsecured Creditors' ("Committee") Joinder in the Motion

---

[1] A motion substantially identical to the Motion to Abate was filed in each of the following adversary proceedings commenced by the Trustee against the Motion to Abate movants: *Stettin v. Caro Group, LLC*, 10-03552-RBR; *Stettin v. Exito Investment Group, LLC*, 10-03553-RBR; *Stettin v. Marmarser Investment, LLC*, 10-03554-RBR; *Stettin v. Network Resources Investment Group, LLC*, 10-03602-RBR; *Stettin v. New Miami Group, LLC*, 10-03556-RBR; *Stettin v. Pirulin Group, LLC*, 10-03557-RBR, and *Stettin v. OPMonies 2, LLC*, 10-03558-RBR. Each of those defendants also filed joinders in the Motion to Abate in the main bankruptcy case (D.E. 2069-74).

to Abate (D.E. 2080),[2] (iii) the Joinder in the Motion to Abate filed by the Ira Sochet Inter Vivos Revocable Trust and Investors Risk Advantage, LP (D.E. 2137), (iv) the Joinder in the Motion to Abate filed by Emess Capital, LLC (D.E. 2160) (collectively, "Joinders"), the Response in Opposition ("Response") (D.E. 2163) to the preceding filed by Herbert Stettin ("Stettin" or "Trustee"), the Trustee of Rothstein Rosenfeldt Adler, P.A. ("RRA" or the "Debtor"), (vi) the subsequently filed Joinder in the Motion to Abate filed by Razorback Funding (D.E. 2169), and (vii) the Reply of the Pirulin Group to the Response (D.E. 2384) (the "Pirulin Reply"). The Court took the matter under advisement and required the Trustee, Committee, and Razorback Funding to submit competing proposed orders.[3]

The Court has considered the Motion to Abate, the Joinders, the Response, the Pirulin Reply, the arguments on the record by counsel for the various interested parties, the Notice of Filing of Trustee Lender/Investor Litigation Status Report (D.E. 2344), and the record in the captioned main bankruptcy case as well as the adversary proceedings referenced in footnote 1 above. For the reasons set forth below, the Court finds and rules that the moving parties (collectively, the "Movants") have failed to show that they are entitled to the extraordinary relief requested in the Motion to Abate and the Joinders (and the substantively identical motions and joinders filed in the referenced adversary proceedings) (collectively, the "Abatement Requests"). Accordingly, the Abatement Requests are denied.

I.  **Background**

This proceeding arises from the collapse of the notorious Ponzi scheme orchestrated by Scott Rothstein, one of the owners of Rothstein Rosenfeldt Adler, P.A., the Debtor herein.

---

[2] A joinder substantially identical to the Committee Joinder was filed in each of the adversary proceedings listed in footnote 1 above.
[3] The proposed orders submitted by the Committee, Razorback Funding, and the Pirulin Group are nearly identical.

2

Rothstein operated a multi-faceted scheme in which he offered investors the opportunity to purchase settlements. Rothstein claimed that the Debtor represented clients who had agreed to settlements of employment-related claims, such as sexual harassment claims.

Rothstein represented that the settlements were offered for sale because the Debtor's settling clients needed cash immediately and those clients agreed to accept a discounted settlement amount in exchange for an immediate payment to be funded by the investors.[4] In fact, these clients and settlements did not exist. Investors "purchased" those settlements and were supposed to receive periodic distributions over time. As with any Ponzi scheme, it collapsed in the Fall of 2009 when Rothstein could no longer fund payments to investors. Creditors commenced this proceeding on November 10, 2009 with the filing of an involuntary petition under Chapter 11 against Rothstein's law firm.

### The Adversary Proceedings

Commencing in 2009, the Trustee filed numerous adversary proceedings, with many adversaries filed recently in the period shortly before the two-year deadline under 11 U.S.C. § 546(a)(1)(A) for the Trustee to commence certain Chapter 5 actions. The adversary proceedings can be divided into the following general categories: (1) claims against non-investors for alleged preferential transfers under 11 U.S.C. § 547;[5] (2) claims against professionals, financial institutions, and others alleged to have liability arising out of the scheme; (3) claims against investors who are "Net Winners";[6] and (4) claims against investors who are "Net Losers."[7]

---

[4] The Court is aware that there were variations of the scheme and in the representations made by Rothstein.

[5] These labels are merely for convenience and do not mitigate against other claims, defenses, or descriptions of these claims.

[6] "Net Winners" are those investors who are alleged to have received more from the scheme than they invested. See In re Bernard L. Madoff Inv. Secs. LLC, 654 F.3d 229, 236-38 (2d Cir. 2011) (affirming use of net investment method).

[7] "Net Losers" are persons who received less in transfers than they invested. See, e.g., Official Cattle Contract Holders Comm. v. Commons, 552 F.2d 1351 (9th Cir. 1977). The Court does not make any finding or ruling that a "net loser" requires an identity of interest or ownership or whether and to what extent the "new value" defense may apply.

3

### Other Pending Claims and Actions

The Court is cognizant there are other proceedings in which creditors of the Debtor are pursuing civil actions against entities alleged to be culpable for the losses these creditors suffered. Several of these actions are being or will soon be tried. Included among these actions are *Coquina Investments v. TD Bank, N.A.*, Case No. 10-cv-60786-Cooke; *Emess Capital, LLC v. Rothstein, et al.*, Case No. 10-cv-60882-JAL, and *Razorback Funding, LLC, et al. v. Rothstein, et al.*, Case No. 09-062943-CA-19 (Broward Circuit Court) (the "Razorback Funding Case"). The United States also initiated an action for restitution, in *United States v. Scott Rothstein*, Case No. 10-30661-cr-COHN, and has obtained forfeiture orders.

## II. The Abatement Requests

In the Pirulin Group's Motion to Abate, a group of eight "victims" of the Ponzi scheme seek to stay the Trustee from advancing currently pending litigation against all Net Losers. The Committee and others joined with the Motion. The Movants argue that pending actions against innocent Net Losers should be abated or stayed so that the Trustee can concentrate estate resources on the "most culpable" litigation targets.[8]

The Court's primary concern is that the abatement method proposed by the Movants is impractical. Other concerns are with usurping the Trustee's discretion in favor of interested parties and the lack of authority for granting such extraordinary relief.

### A. The Relief Requested is Unfeasible

The Movants suggest that the Trustee should only be precluded from pursuing claims against "innocent" Net Losers. However, the Movants have not defined what constitutes an "innocent" Net Loser and have not advised the Court of the factors to be considered in making

---

[8] The litigation that the Movants seek to abate generally involves similar substantive claims by the Trustee to avoid and recover preferential transfers, avoid and recover actually and constructively fraudulent transfers, and alternatively, for damages for violation of Florida's usury law. The Movants focus their arguments exclusively on the Trustee's fraudulent transfer claims and ignore the Trustee's other claims. They do not argue that the Trustee's preference or usury claims are deficient and do not explain why those claims should be abated. Therefore, the Court will only focus its analysis on the fraudulent transfer claims and deny abatement insofar as the preferential claims and claims under Florida's usury law.

4

that determination. In their proposed order, the Movants suggest that an "innocent" net loser is not an insider. They also suggest that "innocent" parties are those that should not be deemed culpable solely because that party engaged in usurious transactions. The Movants' assertion is dependent on the assumption that all Net Losers acted in good faith. However the plain language of 11 U.S.C. § 548 and cases interpreting the good faith defense state that the party seeking to assert good faith as a defense has the burden of establishing such good faith. *Bayou Superfund, LLC v. WAM Long/Short Fund II, LP (In re Bayou Gp.)*, 362 B.R. 624, 631 (Bankr. S.D.N.Y 2007).

Moreover, the Movants do not suggest the period of time for which the Trustee's claims should be abated. The Pirulin Group seeks to abate such lawsuits until all claims against all Net Winners, TD Bank, and Gibraltar Bank are "resolved." The Pirulin Group offers no definition of the term "resolved" in the Motion to Abate. At the October 31 hearing, counsel for the Committee, suggested that the relevant lawsuits should be abated until the conclusion of litigation against TD Bank and Gibraltar. (D.E. 2270 at 54-55). The competing order submitted to the Court on behalf of The Pirulin Group and Committee requests abatement "until the earlier of July 1, 2012 or resolution of the Razorback Funding [C]ase at the trial level." The Razorback Funding Case will be tried before a jury in March 2012. Notwithstanding, it is unclear that any such abatement would serve a useful purpose. *Cf. TFS Elec. Mfg. Servs., Inc. v. Topsearch Printed Circuits (HK), Ltd. (In re TFS)*, 2008 WL 45396, at *1 (D. Ariz. Jan. 2, 2008) (reviving an adversary proceeding "to move forward with further discovery and trial" after the parties' agreed abatement did not lead to settlement). The Court is simply unwilling to delay the Trustee's ability to bring closure to various adversary proceedings and this case, pending resolution of other litigation.

Even if the Court were to grant the relief requested in the Abatement Requests, there would have to be some mechanism for the Trustee to except certain Net Loser cases from any abatement. The proposed orders submitted by the Pirulin Group and the Committee provide

5

that the Trustee may seek relief from the abatement order "for cause." But they do not explain the parameters of "cause," although they do suggest that it is the Trustee's burden to prove a transferee acted culpably (i.e., in bad faith). Again, the plain language of section 548 provides that establishing good faith is on the party seeking to assert the defense. Further, creating a system in which the Trustee must litigate lifting an abatement order "for cause" prior to continuing with already pending litigation may actually lead to the result the Movants are attempting to avoid—incurring costs associated with litigation.

In the end, it is the Trustee who makes the determination whether to pursue claims. Here, the Movants request that this Court effectively remove from the Trustee one of the key powers entrusted to trustees—the ability to pursue claims on behalf of the estate for the benefit of all creditors. In so doing, the Abatement Requests implicate the power, authority, and judgment of the Trustee. Generally, trustees have broad discretion in determining, in their own business judgment, how best to administer the estates to which they owe a fiduciary duty. *See In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) (explaining that a "trustee is given a substantial degree of discretion in deciding how best to administer the estate committed to his care and his actions are measured by a business judgment standard"). It has been further recognized that such broad grant of discretion is applicable to the decision of whether and when to pursue litigation on behalf of an estate. *See id.*; *In re Smith*, 426 B.R. 435, 441 (Bankr. E.D.N.Y. 2010).

The Movants uniformly recognize the right of the Trustee to discharge his fiduciary duties according to his informed business judgment yet they disagree with the Trustee's decision to pursue various claims against them and other purportedly similarly situated defendants. Interested parties cannot usurp a trustee's authority to make decisions regarding whether and when to pursue litigation. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8-9 (2000) (recognizing that "general[ly], section 1109 does not bestow any right to usurp the trustee's role as representative of the estate with respect to the initiation

of certain types of litigation that belong exclusively to the estate") (internal citations omitted). The reasoning for placing such decisions solely with trustees, removed from the control of creditors, is sound. While often aligned, creditors' committees and trustees represent different and sometimes conflicting interests. Therefore, while the interests of the unsecured creditors should be considered by the Trustee, they should not, alone, control. *See Official Comm. Unsecured Creditors of Grand Eagle Companies, Inc. v. ASEA Brown Boveri, Inc.*, 313 B.R. 219, 227 (N.D. Ohio 2004). Granting the requested relief may also have the ironic result of elevating the Movants' interests above other fraudulent transfer recipients and trade creditors. Indeed, the requested abatements would effectively create a new class of defendants—self-proclaimed "innocent" Ponzi scheme "victims" who would be entitled to priority treatment over other fraudulent transfer recipients.

Even if the Court were to grant the relief requested in the Abatement Requests, the Trustee has represented that prior to bringing the claims, he made an informed decision. In making that decision, he considered whether each prospective avoidance defendant had sufficient knowledge, either objective or subjective, to place them on inquiry notice of the potential of the fraudulent activity. Therefore, even if the Court were to grant the relief requested by the Movants, it is not clear which specific claims would be abated.

The Committee Joinder and the Committee and Pirulin Group's proposed orders, further seek to condition the requested abatement of claims on the willingness of a potential litigation target to post "sufficient collateral" to secure the amount of its "net preference claims." However, the Movants fail to indicate how either the sufficiency of collateral or the "net" preference exposure would be determined. The issue of calculating the "net" preference exposure of a given preference defendant is not necessarily as simple as adding all transfers from RRA to the defendant and subtracting all transfers from the defendant to RRA. As represented to the Court by the Trustee's counsel, a number of the preference defendants

transferred funds to or received transfers from RRA through other affiliated parties, or in amounts representing payments on various unrelated transactions.

Therefore, based on the record before this Court, implementing the Abatement Requests is impractical. Further, the Court will not interfere with the Trustee's business judgment. If the Movants feel the Trustee is not carrying out his statutory duties then they may file the appropriate motion.

### B. The Lack of Authority for the Relief Requested

The Pirulin Group's Reply and the Pirulin Group and Committee's proposed orders cite to several cases, yet the cases do not support or are directly relevant to the relief requested in this matter.

#### SEC and Other Ponzi Scheme Cases

The Movants also assert that the Trustee in this case should not pursue claims against Net Losers based on positions advanced by the Securities and Exchange Commission ("SEC") and trustees in other Ponzi scheme cases.

The Movants first point to what they assert is the uniform position of the SEC, that receivers in SEC cases should not seek to avoid transfers to net losers. However, as the Movants recognize, this case is not an SEC receivership case and the Trustee is not bound by or subject to SEC guidelines or protocols. Instead, as the Movants also recognize, the Trustee is guided and governed by the provisions of the Bankruptcy Code.

The Movants also point to certain other Ponzi scheme cases which they contend show that trustees generally do not pursue claims against net losers. For example, the Committee contends that the trustee in the Bernard L. Madoff case is not pursuing claims against innocent net losers. However, as recognized in the article cited by the Pirulin Group regarding the Madoff case (D.E. 2163 at Ex.A), the guidelines for pursuing avoidance actions issued by the trustee in the Madoff case included whether there were facts or circumstances suggesting that the transfer recipient lacked good faith. Accordingly, as the Trustee is only seeking the return of

8

principal under fraudulent transfer theories where the facts and circumstances indicate that the party may have lacked good faith, it is not clear that the position of the Trustee in this case is inconsistent with the position of the Madoff trustee.

Further, it is important to note that the RRA case is different from the Madoff case. This case does not involve hundreds of "mom and pop" investors who relied on representations of their registered and licensed securities brokers and received better than average returns on what the investors believed were investments in publically traded securities. This case involves a limited number of generally sophisticated parties who received rates of return commonly over 100% on purportedly pre-suit settlements of employment-related claims.

Therefore, even if these SEC and Ponzi scheme cases were instructive, each case must be evaluated and resolved according to its own merits and based on its own particular facts. Decisions regarding those parties who may be liable to the estate should be based upon a case by case analysis of various factors. It cannot be assumed that the facts pertaining to other cases, and the causes of action those facts may or may not support, are the same as are present in the claims at issue in this case.

## III.    Conclusion

The Movants have failed to meet their burden in establishing that this Court can or should abate the Trustee's various claims against Net Losers. The Movants failed to present the Court with terms and conditions for such abatements that are clear or practical. Finally, based on the record, the Court will not curtail the Trustee's business judgment in making decisions regarding whether and when to pursue litigation. Accordingly, it is,

**ORDERED** that the Motion to Abate (D.E. 2066), and Joinders thereto (D.E. 2080, 2137, 2160, 2169), and all similar or related motions or joinders filed in the instant case and any of the aforementioned adversary proceedings are **DENIED without prejudice**.

The Trustee shall upload a simple order denying without prejudice the abatement requests and joinders thereto, in each adversary proceeding referenced in footnote 1. The

9

Trustee shall attach this order as an exhibit to the orders that are filed in each of the referenced adversary proceedings.

###

Copies to:
Paul Steven Singerman, Esq.  *(Paul Steven Singerman is directed to serve this Order to all parties of interest and to file a Certificate of Service.)*